UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

**NOT FOR PUBLICATION**

```
------------------------------------------------X
                                                 :
Maximum Human Performance, Inc. :
                                                 :
            Plaintiff,                           :
                                                 :    Civil Action 09-235 (PGS)
                                                 :
                                                 :    OPINION & ORDER and
       v.                                        :    REPORT & RECOMMENDATION
Dymatize Enterprises, Inc.                       :
and Michael Casid,                               :
                                                 :
            Defendants.                          :
------------------------------------------------X
```

This matter comes before the Court on Plaintiff's Motion to Stay Prosecution of an Action Filed in the Northern District of Texas (Docket Entry No. 6) and Defendants' Motion to Dismiss, Stay, or Transfer Venue to the Northern District of Texas (Docket Entry No. 9). For the reasons set forth below, the undersigned **DENIES AS MOOT** Plaintiff's Motion to Stay. Pursuant to Local Civil Rule 72.1(a)(2), the Honorable Peter G. Sheridan, United States District Judge, referred Defendants' Motion to Dismiss, Stay, or Transfer Venue to the Northern District of Texas to the undersigned for report and recommendation. For the reasons set forth below, the undersigned recommends **GRANTING** Defendants' Motion to Transfer Venue to the Northern District of Texas.

## I. BACKGROUND

This action was instituted by Plaintiff Maximum Human Performance, Inc., ("MHP"), a New Jersey corporation with its principal place of business in Fairfield, New Jersey, against Dymatize Enterprises, Inc. ("Dymatize"), a Texas corporation with its principal place of business

in Farmers Branch, Texas, and Michael Casid ("Casid"), a Texas citizen, by way of Complaint dated January 16, 2009.

Plaintiff is engaged in the business of marketing and distributing food and nutritional supplements. (Compl. ¶ 11.) Since September 2004, Plaintiff has sold Probolic®-SR, a nutritional supplement which employs a patented sustained release technology to deliver proteins and amino acids over a twelve-hour period after ingestion. (*Id.* ¶¶ 14-15.) Defendant Dymatize distributes, advertises, and promotes food and sports nutritional supplements in New Jersey and throughout the United States. (*Id.* ¶ 18.) On or about December 2007, Dymatize began to distribute, advertise, and promote Elite 12, a protein nutritional supplement which competes directly with MHP's Probolic®-SR. (*Id.* ¶ 17.)

By way of Complaint, Plaintiff contends that both print and media advertisements produced, distributed, published, and/or authorized for publication by Dymatize contains false, misleading, and/or deceptive statements about its Elite 12 product line. (*Id.* ¶ 19.) Plaintiff also argues that Defendant Casid, in his capacity as an executive officer of Dymatize, planned, approved, supervised, and/or carried out the alleged false advertising for Dymatize's Elite 12 product line. (*Id.* ¶ 20.) Plaintiff is now seeking injunctive relief and monetary damages for violations of the Lanham Act, 15 U.S.C. § 1125(a), and the New Jersey Fair Trade Act, N.J.S.A 56:4-1 *et seq.*, as well as for common law unfair competition.

On December 4, 2008, MHP President Gerard Dente ("Dente") contacted Dymatize and spoke with Casid about the validity of Dymatize's Elite 12 advertising claims. (Casid Cert. ¶ 4.) Dente offered to settle Plaintiff's claims if Dymatize agreed to suspend the marketing and sale of its Elite 12 products. Without such an agreement, Dente indicated that he would "find it

necessary to file a lawsuit." (Dente Cert. ¶ 12.) Despite the threat of suit, Casid neither indicated to Dente that Dymatize would suspend the marketing or sale of its Elite 12 products nor requested that Dente refrain from filing suit. (Casid Cert. ¶¶ 5-6.) Casid notified Dente that consultation with his technical staff was necessary to determine the validity of Dymatize's Elite 12 advertising claims, and he would contact him again in one week. (Casid Cert. ¶ 9, Dente Cert. ¶ 12.)

On December 11, 2008, Dymatize's outside counsel, Casey Griffith ("Griffith"), contacted Dente by telephone. (Dente Cert. ¶ 13.) According to Dente, this conversation was "virtually identical" to his December 4, 2008 conversation with Casid. (Dente Cert. ¶ 13.) Dente reiterated his claims regarding Dymatize's Elite 12 products and signaled that MHP would file a lawsuit "unless [Dymatize] produced evidence that it actually had the technology" to substantiate its advertising claims. (Dente Cert. ¶ 13.) Dente asked Griffith, "Where do we go from here?", to which Griffith replied that he needed to consult with his client. (Dente Supp. Cert. ¶ 4.) Based on this conversation, Dente assumed that Dymatize had entered into settlement negotiations, (Dente Supp. Cert. ¶ 4.), but Casid refutes this claim. (Casid Cert. ¶ 7.)

On or about January 8, 2009, Dymatize sent to Plaintiff technical documentation related to its Elite 12 products. (Casey Cert. ¶ 7, Dente Cert. ¶ 15.) On January 9, 2009, Dymatize filed a declaratory judgment action in the United States District Court for the Northern District of Texas (the "Texas action") (Dente Cert. ¶ 16.), in which Dymatize seeks a declaration that its Elite 12 advertising claims do not constitute false advertising under the Lanham Act. (Dymatize Compl. ¶ 16, January 9, 2009.)

Plaintiff filed the present Complaint in the District of New Jersey (the "New Jersey

-3-

action") on January 16, 2009.  On March 2, 2009, Plaintiff filed a Motion to Stay Prosecution of Action Pending in the United States District Court, Northern District of Texas.  Plaintiff argues that an exception to the first-to-file rule is warranted because of Dymatize's bad faith and its anticipatory filing of the Texas action during ongoing settlement negotiations.  (Pl.'s Mot. 9.)

Defendants filed a Brief in Opposition to Plaintiff's Motion to Stay and a Motion to Dismiss, Stay, or Transfer on February 26, 2009.  Defendants assert that Dymatize did not engage in bad faith, that the Texas action is not an anticipatory filing, and that the New Jersey action should be dismissed or stayed pending resolution of the Texas action because the first-to-file rule applies.  Alternatively, Defendants argue that this case should be transferred to the Northern District of Texas.  (Defs.' Opp'n Br. 1, Defs.' Mot. 1.)

Plaintiff filed a Brief in Opposition to Defendants' Motion to Dismiss, Stay, or Transfer together with a Reply Brief in Support of its Motion to Stay on March 19, 2009, reiterating their previous claims against Defendants.

## II. DISCUSSION

### A.  *Relevant Law*

Plaintiff argues that the first-to-file rule should not apply because of Defendants' bad faith conduct, Defendants' anticipatory filing of the Texas action, and the absence of necessary causes of action and parties in the first-filed Texas action.  (Pl.'s Mot. 9-15.)

The first-to-file rule provides that "in all cases of federal concurrent jurisdiction, the court which first has possession of the subject matter must decide it."  *EEOC v. Univ. of Pa.*, 850 F.2d 969, 971 (3d Cir. 1988).  The doctrine is a "policy of comity" that "counsel[s] trial judges to exercise their discretion by enjoining subsequent prosecution of 'similar cases . . . in different

federal courts.'" *Id.* (citations omitted).  Accordingly, the doctrine gives courts the power to dismiss, stay, or transfer a later-filed case.  *Allianz Life Ins. Co. of N. Am. v. Estate of Bleich*, 2008 U.S. Dist. LEXIS 90720, at *7 (D.N.J. Nov. 6, 2008) (citing *Keating Fibre Int'l, Inc. v. Weyerhaeuser Co.*, 416 F. Supp. 2d 1048, 1052-1053 (E.D. Pa. 2006)).

For the first-to-file rule to apply, there must be a "substantial overlap" between the two actions, but the issues and parties involved need not be identical.  *Siemens Fin. Servs. v. Open Advantage M.R.I. II L.P.*, No. 07-1229, 2008 U.S. Dist. LEXIS 15623, at *10 (D.N.J. Feb. 29, 2008); *Nature's Benefit, Inc. v. NFI*, No. 06-4836, 2007 U.S. Dist. LEXIS 62871, at *8 (D.N.J. Aug. 27, 2007) (citing *Save Power Ltd. v. Syntek Fin. Corp.*, 121 F.3d 947, 950 (5th Cir. 1997)); *GlaxoSmithKline Consumer Healthcare, L.P. v. Merix Pharm. Corp.*, No. 05-898, 2005 U.S. Dist. LEXIS 40007, at *26 (D.N.J. May 10, 2005) (citing *Specialty Ins. Agency, Inc. v. Walter Kaye Associates, Inc.*, No. 89-1708, 1989 U.S. Dist. LEXIS 6755, at *5 (D.N.J. June 7, 1989)).

Although exceptions to the first-to-file rule are rare, the rule is not a "rigid or inflexible rule to be mechanically applied."  *EEOC*, 850 F.2d at 976 (citations omitted).  Proper bases upon which a court may depart from the rule include (1) rare or extraordinary circumstances; (2) inequitable conduct; (3) bad faith; (4) forum shopping; (5); where the later-filed action has developed further than the first-filed action; and (6) "when the first filing party instituted suit in one forum in anticipation of the opposing party's imminent suit in another, less favorable, forum."  *Id.* at 972, 976 (collecting cases).  The plaintiff, however, "bears the burden of showing that special circumstances should bar its application."  *GlaxoSmithKline Consumer Healthcare*, 2005 U.S. Dist. LEXIS 40007, at *28 (citing *Emerson Radio Corp. v. Emerson Elec. Corp.*, No. 89-1979, 1990 U.S. Dist. LEXIS 8796, at *39 (D.N.J. March 29, 1990)).

On a motion to dismiss or stay under the first-to-file rule, a court must take into account the same factors as those used in a motion to transfer pursuant to 28 U.S.C. § 1404(a) (which motion Defendants have also made). *Ivy-Dry, Inc. v. Zanfel Labs., Inc.*, No. 08-4942, 2009 U.S. Dist. LEXIS 53307, at *8-9 (D.N.J. June 24, 2009) (citing *Nature's Benefit*, 2007 U.S. Dist. LEXIS 62871, at *8-9). "If the factors balance in favor of the first to file rule, then a court may properly dismiss, stay or transfer the second-filed action to avoid duplicative litigation under its inherent power." *Nature's Benefit*, 2007 U.S. Dist. LEXIS 62871, at *9. "However, if the first-filed action is vulnerable to dismissal on jurisdictional grounds, the court in the second-filed action should stay or transfer said action rather than dismiss it outright." *Nature's Benefit*, 2007 U.S. Dist. LEXIS 62871, at *9 (citing *Alltrade, Inc. v. Uniweld Prods., Inc.*, 946 F.2d 622, 628 (9th Cir. 1991)).

Pursuant to § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). Although "the plaintiff's choice of venue should not be lightly disturbed," *Jumara*, 55 F.3d at 879 (citation omitted), that choice is not dispositive. *See In re Consolidate Parlodel Litigation*, 22 F. Supp. 2d 320, 323-24 (D.N.J. 1998). The defendant bears the burden of demonstrating that the alternative forum is more appropriate than the current one. *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995).

In considering a motion to transfer an action, courts in the Third Circuit must balance both public and private interests to determine whether "the litigation would more conveniently proceed and the interest of justice be better served by transfer to a different forum." *Jumara*, 55

F.3d at 879.  The private factors include: (1) the plaintiff's choice of forum; (2) the defendant's preference; (3) whether the claim arose elsewhere; (4) the convenience of the parties; (5) the convenience of the expected witnesses; and (6) the location of books and records.  *See id.* at 879.  The public considerations include: (1) the enforceability of the judgment; (2) practical considerations that could make the trial easy, expeditious, or inexpensive; (3) the relative administrative difficulty in the two fora resulting from court congestion; (4) the local interest in deciding controversies; and (5) the public policies of the fora.  *Id.* at 879-80.

### B.  *The First-to-File Rule*

Defendants argue that the first-to-file rule applies because the issues in the two current actions overlap substantially, the parties in the two actions are substantially similar, and there is no evidence that Defendants engaged in bad faith settlement negotiations or that the Texas action was an improper anticipatory filing.  (Def.'s Mot. 7-16.)

As Defendant Dymatize filed its complaint in the Northern District of Texas on January 9, 2009 and Plaintiff filed its complaint in the District of New Jersey on January 16, 2009, it is undisputed that the Texas action was filed before the New Jersey action.  (Dente Cert. ¶¶ 16-18.)  The two actions are also based on the same subject matter – the validity of Dymatize's Elite 12 marketing claims.  (*Id.*)  Although Plaintiff correctly notes that the Texas action neither addresses its state law unfair competition claims nor includes Casid (Pl.'s Mot. 9), the issues and parties involved in the two actions need not be identical.  *Nature's Benefit, Inc.*, 2007 U.S. Dist. LEXIS 62871, at *8.  Moreover, the test for unfair competition under New Jersey law is identical to the test for unfair competition under the Lanham Act.  *Graco, Inc. v. PMC Global, Inc.*, No.

08-1304, 2009 U.S. Dist. LEXIS 26845, at *92-93 (D.N.J. Mar. 31, 2009) (citing *AT&T v. Winback & Conserve Program*, 42 F.3d 1421, 1433 (3d Cir. 1994)).

Plaintiff contends that this Court should depart from the first-to-file rule because of Defendant's alleged bad faith.[1] (Pl.'s Opp'n Br. 8.) In particular, Plaintiff alleges that the parties were engaged in settlement discussions, that Defendants induced Plaintiff to delay filing suit, and that Defendants secretly filed a declaratory judgment action in the Northern District of Texas to avoid litigation in New Jersey. (Pl.'s Opp. Br. 10.) While a court may properly depart from the first-to-file rule if Defendants acted in bad faith, *see EEOC*, 850 F.2d at 972, the Plaintiff bears the burden of showing that Defendants' misconduct should bar its application. *GlaxoSmithKline Consumer Healthcare*, 2005 U.S. Dist. LEXIS 40007, at *28 (citation omitted).

Contrary to Plaintiff's contentions, neither the December 4, 2008 telephone conversation between Dente and Casid nor the December 11, 2008 conversation between Dente and Griffith initiated settlement negotiations. (Casid Cert. ¶¶ 5-9, Dente Cert. ¶¶ 11-13, Dente Supp. Cert. ¶¶ 2-4.) Defendant neither agreed to suspend marketing its Elite 12 products nor requested Plaintiff to withhold filing suit. (Casid Cert. ¶¶ 5-8, Dente Cert. ¶¶ 11-12.) Moreover, Plaintiff never set forth a date certain after which it would file suit in New Jersey. (Casid Cert. ¶¶ 5-8, Dente Cert. ¶¶ 12-13.) The Court finds that the most reasonable interpretation of those exchanges is merely

---

[1] Plaintiff also asserts that the first-to-file rule should not apply because it is not subject to personal jurisdiction in the State of Texas. (Pl.'s Opp'n Br. 11-19). This Court, however, will not address this argument, which is better left to the Northern District of Texas. Even if the Texas action is "vulnerable to dismissal on jurisdictional grounds," this Court should "stay or transfer said action rather than dismiss it outright." *Nature's Benefit*, 2007 U.S. Dist. LEXIS 62871, at *9 (citing *Alltrade, Inc. v. Uniweld Prods., Inc.*, 946 F.2d 622, 628 (9th Cir. 1991)).

a haphazard agreement that Defendant would discuss its Elite 12 marketing claims with Plaintiff at some point in the future.

Plaintiff's assertions that the Defendants induced it to delay filing suit and that Defendants' filing of a declaratory judgment action in the Northern District of Texas constitutes a bad faith anticipatory filing are similarly without merit.  To support its contention that departure from the first-to-file rule is warranted, Plaintiff relies on *HPF, LLC v. Nu Skin Enters.*, 1999 U.S. Dist. LEXIS 15200 (E.D. Pa. Sept. 27, 1999).  There, the plaintiff filed a declaratory judgment action for non-infringement in the midst of active settlement negotiations with the defendant.  *See id.* at *1.  After receiving a complaint from defendant, plaintiff stated that it was willing to make "reasonable changes" to the disputed label and even sent defendant a proposed modified label.  *See id.* at *2.  Defendant deemed those changes insufficient, demanded that plaintiff suspend its marketing, and gave a date certain by which defendant expected plaintiff to respond to its demands.  *See id.* at *3.  Instead of continuing negotiations, plaintiff filed a declaratory judgment action in the Eastern District of Pennsylvania.  Defendant thereafter filed suit in the District of Utah.  Because of plaintiff's bad faith and the fact that the Utah action was further developed, the court departed from the first-to-file rule and transferred the case to the District of Utah.

Those factors are entirely absent in the case at bar.  Here, Defendants neither agreed to make "reasonable changes" to its Elite 12 product labels nor proposed to modify its Elite 12 marketing campaign.  (Casid Cert. ¶ 5.)  In fact, Defendants expressed no interest at all that they were interested in halting marketing the products in question.  (*Id.*)  Additionally, Plaintiff never

specified a date upon which it expected Defendants to respond to its demands. (Casid Cert. ¶ 8, Dente Cert. ¶¶ 12-13, Dente Supp. Cert. ¶¶ 3-4.)

Plaintiff further relies upon *One World Botanicals v. Gulf Coast Nutritionals,* 987 F. Supp. 317 (D.N.J. 1997). There, the plaintiff filed suit against the defendant in the District of New Jersey one week after defendant filed a declaratory judgment action in the Middle District of Florida. *See id.* at 321. Plaintiff had sent a letter to defendant clearly indicating plaintiff's intention to file suit against defendant unless it discontinued use of an infringing trademark. *See id.* at 329. The letter also provided a 15-day period in which plaintiff would abstain from filing suit while defendant remedied the situation. *See id.* Then defendant requested more time to respond to the letter and plaintiff agreed. Thereafter, defendant filed a declaratory judgment action in the Middle District of Florida. *See id.* at 321. Although the court did not find bad faith, it departed from the first-to-file rule because the later-filed New Jersey action had developed further than the first-filed Florida action and defendant had instituted suit in Florida in anticipation of the plaintiff's imminent suit in New Jersey.

*One World* is also distinguishable from the present case. Here, Plaintiff never articulated a specific date upon which it expected Defendants to respond to its demands (Casid Cert. ¶ 7.) and Defendants never requested an extension from such a date. Plaintiff merely indicated that it would file suit at some point in the future. (Dente Cert. ¶¶ 12-13.) Plaintiff's suit was thus not imminent. Moreover, Defendants did not file their declaratory judgment action in the Northern District of Texas until January 9, 2009 (Dente Cert. ¶ 16.), nearly one month after Plaintiff's final telephone conversation with Defendants.

The Court finds that Defendants' comments to Dente were insufficient to induce a reasonable person to delay filing suit. Simply stated, inducement requires some kind of an affirmative act or statement on the part of the Defendants. Neither are present in the case at bar. The Court further finds that Defendant Dymatize's filing of the Texas action does not constitute an anticipatory filing because Plaintiff never set forth a specific date on which it would file suit in New Jersey. After all, "declaratory judgment actions are by nature 'anticipatory[.]'" *Viacom Int'l, Inc. v. Melvin Simon Productions, Inc.*, 774 F. Supp. 858, 867 (S.D.N.Y. 1991). Therefore, under the circumstances of this case, the first-to-file rule applies.

Because the Court finds that the first-to-file rule applies to the instant action, this Court must allow the pending Texas action to proceed, and Plaintiff's Motion to Stay will be denied as moot.

### *C. Defendants' Motion to Dismiss, Stay, or Transfer*

Having decided that the Texas action, as the first-filed action, should proceed, this Court must now decide the appropriate course with respect to the present action. Defendants request that this action be dismissed, or, in the alternative, either stayed or transferred to the Northern District of Texas. On a motion to dismiss, stay, or transfer under the first-to-file rule, a court must take into account the same factors as those used in a motion to transfer pursuant to 28 U.S.C. § 1404(a). *Ivy-Dry, Inc. v. Zanfel Labs., Inc.*, No. 08-4942, 2009 U.S. Dist. LEXIS 53307, at *8-9 (D.N.J. June 24, 2009) (citing *Nature's Benefit*, 2007 U.S. Dist. LEXIS 62871, at *8-9). "If the factors balance in favor of the first to file rule, then a court may properly dismiss, stay or transfer the second-filed action to avoid duplicative litigation under its inherent power." *Nature's Benefit*, 2007 U.S. Dist. LEXIS 62871, at *9.

-11-

Pursuant to § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a).  An action might have been brought in another district if (1) venue is proper in that district and (2) that district can exercise jurisdiction over all defendants.  *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 24 (3d Cir. 1970).  In a civil action based on federal question jurisdiction, venue is proper "in (1) a judicial district where any defendant resides . . . , [or] (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred[.]"  28 U.S.C. § 1391(b).  For purposes of § 1391, a corporation is said to "reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced."  28 U.S.C. § 1391(c).

Here, it is undisputed that this action might have been brought in the Northern District of Texas.  *See* 28 U.S.C. § 1391(a)(2) (venue is proper in any district where "a substantial part of the events . . . giving rise to the claim occurred"); *see also* 28 U.S.C. § 1391(a)(1) (venue is proper in any district where a defendant resides); 28 U.S.C. § 1391(c) (a corporate defendant resides in any district where it is subject to personal jurisdiction).  Defendant Dymatize is incorporated in Texas, its principal place of business is in Texas, and Defendant Casid is a citizen of Texas residing in Texas.  Venue is proper in the Northern District of Texas because Defendant Dymatize is subject to personal jurisdiction there, Defendant Casid resides there, and a substantial part of the events giving rise to MHP's false advertising and unfair competition claims occurred in Dymatize's headquarters in that District.  Consequently, the instant matter might have been brought in the Northern District of Texas.

Although "the plaintiff's choice of venue should not be lightly disturbed," *Jumara*, 55

F.3d at 879 (citation omitted), that choice is not dispositive. *See In re Consolidate Parlodel Litigation*, 22 F. Supp. 2d 320, 323 (D.N.J.).  The defendant bears the burden of demonstrating that the alternative forum is more appropriate than the current one. *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995).

In considering a motion to transfer, courts in the Third Circuit must balance both public and private interests to determine whether "the litigation would more conveniently proceed and the interest of justice be better served by transfer to a different forum." *Jumara*, 55 F.3d at 879. The private factors include: (1) the plaintiff's choice of forum; (2) the defendant's preference; (3) whether the claim arose elsewhere; (4) the convenience of the parties; (5) the convenience of the expected witnesses; and (6) the location of books and records. *Id.* at 879.  The public considerations include: (1) the enforceability of the judgment; (2) practical considerations that could make the trial easy, expeditious, or inexpensive; (3) the relative administrative difficulty in the two fora resulting from court congestion; (4) the local interest in deciding controversies; and (5) the public policies of the fora. *Id.* at 879-80.

In the instant case, most of the private factors favor transfer to the Northern District of Texas.  The sole private factor that weighs against transfer in this case is the plaintiff's choice of forum.  Dymatize's marketing, shipping, manufacturing, research, and development take place in Texas. (Casey Cert. ¶ 3.)  MHP's false advertising and unfair competition claims arose out of activities that allegedly took place at Dymatize's headquarters in Texas.  Proof of MHP's claims will turn on evidence demonstrating whether Dymatize and/or Casid designed and implemented the alleged false advertising campaign in Texas.  Witnesses to the alleged false advertising and unfair competition are likely to be officers and/or employees of Dymatize, all of whom are

located in Texas. (Casey Cert. ¶ 4.) In addition, all books, records, and information relating to the design, selection, and implementation of the alleged false advertising campaign are located in Texas. (Casey Cert. ¶ 5.) Even though the location of documents is generally entitled little weight, *see Clark v. Burger King Corp.*, 255 F. Supp. 2d 334, 339 (D.N.J. 2003), the private considerations weigh heavily in favor of transferring this case.

The public considerations likewise weigh in favor of transfer. Although neither party suggests the judgment is less enforceable in either forum, Defendants contend that a more expeditious resolution of this litigation can be had in the Northern District of Texas. Indeed, this District's docket is considerably more congested than that of the Northern District of Texas.[2] This Court has noted, however, that the "relative congestion of the respective courts' dockets is not a factor of great importance in this type of motion." *Clark*, 255 F. Supp. 2d at 338 (citations omitted).

On the other hand, the fact that there is a related action pending in the Northern District of Texas is a practical consideration of great importance in deciding a motion to transfer. "To permit a situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts leads to the wastefulness of time, energy and money . . . ." *Continental Grain Co. v. Barge FBL-585*, 364 U.S. 19, 26 (1960). "It is in the interests of justice to permit suits involving the same parties and issues to proceed before one court and not

---

[2] For the twelve-month period ending on Sept. 30, 2008, there were 6,216 civil cases pending in the District of New Jersey and only 3,037 civil cases pending in the Northern District of Texas. *See* Administrative Office of the U.S. Courts, Judicial Business of the United States Courts: 2008 Annual Report of the Director, Table C-6, available at http://www.uscourts.gov/judbus2008/JudicialBusinespdfversion.pdf (last visited June 22, 2009). During the same period, the median time interval from filing to jury trial was 38.5 months in the District of New Jersey and only 24 months in the Northern District of Texas. *See id.* at Table C-10.

simultaneously before two tribunals." *Job Haines Home for the Aged v. Young*, 936 F. Supp. 223, 233 (D.N.J. 1996) (quoting *Ricoh Co. v. Honeywell, Inc.*, 817 F. Supp. 473, 487 (D.N.J. 1993)). Accordingly, both the private and public interest factors favor transferring this action to the Northern District of Texas.

Because the Court is ruling on the basis of the first-to-file rule, it need not address Defendants' additional arguments relating to personal jurisdiction and lack of an indispensable party at this time.

### III. CONCLUSION

For the reasons set forth above, the Court DENIES Plaintiff's Motion to Stay. In addition, the undersigned recommends that the Court GRANT Defendant's Motion to Transfer the action to the Northern District of Texas. Because this Court has decided to transfer the matter, Defendants' motion to dismiss or stay is denied as moot. Pursuant to Local Civil Rule 72.1, the parties have ten days from receipt of this Report and Recommendation to file and serve any objections.

                         s/Esther Salas_____
                          **HONORABLE ESTHER SALAS**
                          **UNITED STATES MAGISTRATE JUDGE**